UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

United States of America            )         CASE NO. 5:13CV2659
                                    )
                Plaintiff,          )         JUDGE JOHN R. ADAMS
                                    )
        vs.                         )
                                    )
                                    )         **MEMORANDUM OF OPINION**
Noble Homes, Inc., et al.,          )         **AND ORDER**
                                    )
                Defendants.         )
                                    )

Pending before the Court is a motion for summary judgment filed by Defendants Guardian Property Management, Inc., Noble Homes, Inc., and Dean Windham (collectively, "Noble Homes"). Doc. 112. In addition, Plaintiff the United States of America has moved for partial summary judgment on the issue of liability.  Doc. 114.  Finally, the United States has twice sought leave to file notices of supplemental authority.  Docs. 138, 140.  These latter two motions are GRANTED to the extent that the Court acknowledges that the cases cited were decided after the briefing in this matter.  The Court now undertakes its review of the pending dispositive motions.

## I.  **FACTS**

Windham Bridge condominium development consists of 13 four-unit buildings and one two-unit building.  This latter two-unit building is not at issue herein.  Certificates of occupancy were issued for the 13 buildings at issue from August 29, 2006 to July 20, 2011.   The units themselves have a main floor that includes a dining room, a kitchen, three bedrooms, and two bathrooms.  Each unit also has some form of a garage with a mechanical garage door and an entry door that leads to a laundry room.

Hampton Court is a three-story building with 14 units and is located at Windham Bridge. The building has four ground floor units.  These ground floor units have two bedrooms and two bathrooms, and the certificate of occupancy for the building was issued on August 29, 2006.

Milton Studer and Studer Architects, LLC, along with Noble Homes, designed and constructed both Windham Bridge and Hampton Court.  Defendant Guardian Property Management, Inc. owned the property on which the buildings were constructed until the time construction was complete.

On December 2, 2013, the United States filed its two-count complaint in this matter.  In its first count, the Government contends that:

> Defendants have failed to design or construct the covered units at Windham Bridge in accordance with 42 U.S.C. § 3604(f)(3)(C). The violations include, but are not limited to, the following:
>
> a. There are no accessible building entrances on an accessible route at approximately thirty-one covered dwelling units;
>
> b. Public use and common use portions are not readily accessible to and usable by individuals with disabilities;
>
> c. The units do not contain the following features of adaptive design: (i) an accessible route into and through the dwelling; (ii) reinforcements in bathroom walls to allow later installation of grab bars; and (iii) usable kitchens and bathrooms such that an individual using a wheelchair can maneuver about the space.

Doc. 1 at 7.  In its second count, the Government asserts that the conduct of the Defendants herein constitutes:

> a. A pattern or practice of resistance to the full enjoyment of rights granted by the Fair Housing Act, 42 U.S.C. §§ 3601-3619; or
>
> b. A denial to a group of persons of rights granted by the Fair Housing Act, 42 U.S.C. §§ 3601-3619, which raises an issue of general public importance.

Doc. 1 at 8.

Noble Homes moved for summary judgment on both claims, and the United States moved for partial summary judgment on the issue of liability.  The motions are fully briefed and the Court now resolves the parties' arguments.

## II.  LEGAL STANDARD FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56(a), the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The party moving for summary judgment may satisfy its burden under Rule 56 in either of two ways: (1) "submit affirmative evidence that negates an essential element of the nonmoving party's claim," or (2) "demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986).

A movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Id*.  Likewise, the moving party's burden of production "may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *White v. Turfway Park Racing Ass'n.*, 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable

evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.  Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), *citing Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988).  The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. Columbus*, 801 F.Supp. 1, 4 (S.D.Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id*.

### III.  ANALYSIS

With respect to Noble Homes' motion for summary judgment, two arguments must be resolved prior to addressing the substantive issues.  First, Noble Homes contends that its units are not "covered units" and therefore not subject to the Fair Housing Act.  Second, Noble Homes contends that this suit and/or its damages fall outside the statute of limitations.  The Court finds no merit in either claim.

The FHA embodies "a national commitment to end the unnecessary exclusion of persons with [disabilities] from the American mainstream" by increasing the stock of accessible housing in furtherance of Congress's "goal of independent living." H.R.Rep. No. 100–711, at 18 (1988),

*reprinted* in 1988 U.S.C.C.A.N. 2173, 2179.  The design and construction requirements of the Fair Housing Amendments Act of 1988 ("FHAA") apply only to new construction of multifamily dwellings built for first occupancy after 1991. See 42 U.S.C. § 3604(f)(3)(C). As used in this section of the FHAA, "covered multifamily dwellings" mean: "(A) buildings consisting of 4 or more units if such buildings have one or more elevators; and (B) ground floor units in other buildings consisting of 4 or more units." 42 U.S.C. § 3604(f)(7). Congress has delegated authority to HUD to administer the statute at issue pursuant to 42 U.S.C. §3608(a) and to issue regulations regarding the statute pursuant to 42 U.S.C. § 3614a.  One court has described HUD's role as follows:

> Congress authorized the Secretary of HUD to promulgate regulations to implement the FHA and provide technical assistance to help achieve the Act's accessibility requirements. *Id*. at §§ 3601, 3604(f)(5)(C). Pursuant to this authority, HUD issued implementing regulations in 1989 that expounded on the FHA's design and construction requirements. 24 C.F.R. § 100.200 et seq. HUD issued the Guidelines two years later. 56 Fed.Reg. 9473–9515 (Mar. 6, 1991).

> The HUD Guidelines guide builders to compliance, but they are merely examples of compliance and therefore not mandatory. *Id*. at 9472. "The purpose of the Guidelines is to describe minimum standards of compliance with the specific accessibility requirements of the Act." *Id*. at 9476. A failure to meet the requirements as interpreted in the Guidelines does not constitute unlawful discrimination. *Id*. The Guidelines are "intended to provide a safe harbor for compliance with the accessibility requirements of the Fair Housing Amendments Act.... Builders and developers may choose to depart from the Guidelines, and seek alternate ways to demonstrate that they have met the requirements of the Fair Housing Act." *Id*. at 9473. The FHA and the Guidelines also provide that another acceptable way to make these areas and features accessible is through compliance with American National Standards Institute ("ANSI") 117.7–1986, American National Standard for Buildings and Facilities—Providing Accessibility and Usability for Physically Handicapped People. Thus, the Guidelines, though relevant and highly significant, are not decisive. The real question is whether the units and common areas are reasonably accessible and usable for most physically disabled people.

> If a construction feature does not comply with the Guidelines, then the housing provider defending an FHA violation has the burden of showing that the feature is nonetheless accessible. *See id.* ("Builders and developers may choose to depart

5

from the Guidelines, and seek alternate ways to demonstrate that they have met the requirements of the Fair Housing Act."); *United States v. Hallmark Homes, Inc.*, No. CV01–432, 2003 WL 23219807, at *8 (D.Idaho Sept. 29, 2003). The Guidelines provide that compliance may be achieved by meeting a "comparable standard"—i.e., one that provides "access essentially equivalent to or greater than required by ANSI A117.1."3 54 Fed.Reg. 3243.

*Memphis Ctr. for Indep. Living v. Richard & Milton Grant Co.,* No. 01-2069-D`, 2004 WL 6340158, at *3-4 (W.D. Tenn. June 29, 2004).  HUD has detailed the use of the Guidelines:

> The Charging Party may establish a prima facie case by proving a violation of the Guidelines. A respondent can then rebut the presumption established by the violation of the Guidelines by demonstrating compliance with a recognized, comparable, objective measure of accessibility. Giving the Guidelines the status of a rebuttable presumption, contrary to the ALJ, is not inconsistent with the concept that the Guidelines are not mandatory; because even if a respondent violates the Guidelines, the respondent can demonstrate that the property satisfies another comparable and objective standard of accessibility and thus avoid a liability finding.

*The Sec'y, United States Dep't of Hous. & Urban Dev., on Behalf of Montana Fair Hous., Inc., Charging Party, & Montana Fair Hous., Inc., Intervenor*, HUDALJ 05-068FH, 2006 WL 4573902, at *5 (Sept. 21, 2006).  This burden shifting was upheld on review by the Ninth Circuit.  *See HUD v. Nelson*, 320 Fed. Appx. 635 (9th Cir. 2009).

Furthermore, under a *Chevron* analysis, rules and regulations promulgated by an administrative agency "are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron v. Nat'l Res. Def. Council*, 467 U.S. 837, 844 (1984). As long as HUD's interpretation is not arbitrary, capricious, or manifestly contrary to the FHA, this Court is directed to defer to that interpretation, HUD being the agency with the authority and expertise to interpret the FHA. *See U.S. v. Edward Rose*, 246 F.Supp.2d 744 (E.D.Mich. 2003).

With respect to whether the units herein are multistory units, the Guidelines provide that "'[m]ultistory dwelling unit' means a dwelling unit with finished living space located on one

floor and the floor or floors immediately above or below it."  Final Fair Housing Accessibility Guidelines, 56 FR 9472-01, 9500 (Mar. 6, 1991).  "If the basement is part of the finished living space of a dwelling unit, then the dwelling unit will be treated as a multistory unit, and application of the Act's accessibility requirements will be determined as provided in the Guidelines for Requirement 4. If the basement space is unfinished, then it would not be considered part of the living space of the unit, and the basement would not be subject to the Act's requirements."  *Id.* at 9481.

The record before this Court indisputably establishes that the dwellings at issue are not multi-story dwellings.  The dwellings were both marketed and sold as single-story ranch units. Further, the evidence is overwhelming that the units were sold with unfinished basements. Noble Homes' sole response to this evidence appears to be that certain owners have chosen to use this space as living space, despite its unfinished nature, and that certain elements like the water heater cannot be accessed without visiting the basement.

Noble Homes contends that a 2013 Policy Statement that works heavily against them cannot be used because it post-dates construction of the units at issue.  Assuming that this would result in an unfair post hoc analysis, Noble Homes' overarching argument still fails.  As the United States notes, "[s]afe harbors standards that constitute compliance with the FHA do not require "water heater[s]," "electrical panels," "HVAC" systems, and "shutoff valves" to be accessible… and in fact explicitly exempt these elements from accessibility requirements."  Doc. 118 at 19 (citing appropriate ANSI standards).  Furthermore, the photographs submitted by both parties show that the basements have no wall partitions of any kind, have exposed mechanical equipment such as furnaces, water heaters, and sump pumps, have exposed ductwork and plumbing, and exposed joists in the ceilings.  None of those features support a finding that the

basements can constitute living space.   Noble Homes' anecdotal evidence that residents are in fact using this space is insufficient to create a genuine issue of material fact.  In fact, as many, if not all, of the features relied upon by Noble Homes in those photographs were not a part of the design of the basement, they cannot be relied upon.  Accordingly, the Court finds no merit in the contention that the units at issue are multi-story units.[1]

Similarly, the Court finds no merit in the contention that the claims herein are untimely. Under the Fair Housing Act, the statute of limitations requires a plaintiff to file a complaint within two years after the "occurrence or termination of an alleged discriminatory housing practice ... whichever occurs last." 42 U.S.C. § 3613(a)(1)(A). Additionally, in actions brought under the Fair Housing Act, the Supreme Court has recognized that a complaint alleging a continuing illegal practice, rather than an isolated incident of violative conduct, is timely when filed within two years of the last occurrence of the illegal practice. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81 (1982).  As the United States has properly alleged a pattern and practice claim and the final unit of Windham Bridge was sold on May 8, 2012, the complaint filed on December 2, 2013 was timely filed.  The Court would note that the overlap between planning and construction of both Windham Bridge and Hampton Court supports the Court's view to treat them as one and the same for purposes of the statute of limitations.

With respect to claimed violations, the United States contends that: 1) the 33 units in Windham Bridge with steps leading to the front doors are not accessible; 2) that various slopes on walkways leading to front entrances cause them to be inaccessible; 3) the mailboxes at both complexes are not accessible; 4) various doors are too narrow for those with wheelchairs; 5)

_____

[1] This is to say nothing about the substantial evidence that Defendants repeatedly marketed the units as single-story units and should be estopped herein from even raising an argument that the units are multi-story.

various door thresholds are too high; 6) various kitchens lack sufficient clear floor space to be used by those in wheelchairs; and 7) the hall bathrooms in various units lack sufficient clear floor space to be used by those in wheelchairs.

There can be no doubt that the United States has alleged deviations from the safe harbors. While the parties vehemently dispute the nature and extent of such deviations, they no doubt exist, even if not in every category argued by the United States.  As such, to some extent, the burden shifting discussed in *Nelson* above is applicable.  Noble Homes, therefore, must demonstrate compliance with a recognized, comparable, objective measure of accessibility.  In an attempt to do so, Noble Homes relies upon its two experts, Mark Wales and Paul Sheriff.   At the same time, the United States relies heavily upon its expert, Gina Hilberry, to press its claims. As a result, this matter has effectively become a battle of experts.  In examining a similar issue, another district judge has noted:

> Each case must be evaluated on an individual basis and "turn on its own facts." *Id.* The determination of whether evidence indicates a pattern or practice of discrimination is ordinarily a question of fact for the jury. *Id.; see also United States v. Garden Homes Management Corp.*, 156 F.Supp.2d 413, 420 (D.N.J.2001).

> Judged against these standards, the court has little difficulty concluding that plaintiff is not entitled to summary judgment on its FHA pattern or practice claim. Even if all the conditions identified by plaintiff deviate from the specifications in the FHA Guidelines, the guidelines are neither mandatory nor prescribe specific requirements which, if not met, would constitute unlawful discrimination. *See Barker*, 2009 WL 500719 at *7, citing 24 C.F.R. Ch. I, Subch. A, App. III (1991). There are other ways to achieve compliance with the accessibility requirements of the FHA. See 56 Fed.Reg. 9472, 9478 (Mar. 6, 1991). Moreover, defendants have adduced expert testimony that all 32 JPI properties are accessible to and usable by persons with disabilities. It is particularly within the jury's ken to examine the more than 500 accessibility barriers alleged by plaintiff and determine whether such evidence constitutes a pattern or practice of discrimination. *See, e.g. Fair Housing Council v. Village of Olde St. Andrews, Inc.*, 250 F.Supp.2d 706, 720 (W.D.Ky.2003) (denying motion for summary judgment in FHA disability discrimination case where only uncontested evidence was that properties failed to meet requirements of FHA Guidelines); U*nited States v. Hallmark Homes, Inc.*,

9

No. CV–01–432–N–EJL, 2003 WL 23219807 at *8 (D.Idaho Sept.29, 2003) (government not entitled to summary judgment with respect to liability under FHA where defendants offered some evidence to dispute alleged violations); *United States v. Pacific Northwest Electrical Co*., No. CV–01–019–S–BLW, 2003 WL 24573548 at *13 (D.Idaho Mar.21, 2003) (same).

*United States v. JPI Const., L.P.*, No. 3-09-CV-0412-B-BD, 2011 WL 6963160, at *4-5 (N.D. Tex. Nov. 10, 2011) report and recommendation adopted, No. 3:09-CV-412-B, 2012 WL 43507 (N.D. Tex. Jan. 9, 2012).  Given the overlap in experts (Sheriff and Wales were also experts in that matter), this Court has little trouble reaching the same conclusion.  For each deviation from the safe harbors, Wales and Sheriff have proposed that no obstacle to accessibility was created.  As such, there remain genuine issues of material of fact as to whether any deviation from the safe harbors resulted in a violation of the FHA and its standards.  As such, the pending motions for summary judgment are DENIED.

## V.    **CONCLUSION**

Each of the pending motions for summary judgment is DENIED.  As noted above, several defenses raised by Noble Homes are untenable.  However, there remain genuine issues of material fact for a jury to resolve on the underlying pattern and practice claim.

IT IS SO ORDERED.


DATE: March 23, 2016          */s/ John R. Adams*_____
                             Judge John R. Adams
                             UNITED STATES DISTRICT COURT